[Criminal No. 954. Filed April 11, 1945.]

[158 Pac. (2d) 151.]

FRED McDANIELS, Appellant, v. THE STATE OF ARIZONA, Appellee.

Mr. Jacob Morgan, for Appellant.

Mr. Joe Conway, Attorney General, Mr. Thomas J. Croaff, Assistant Attorney General; Mr. James A. Walsh, County Attorney, and Mr. Edwin Beauchamp, Deputy County Attorney, for Appellee.

DE CONCINI, Superior Judge.—This case is on appeal by the defendant Fred McDaniels, who was convicted in the lower court of the crime of assault with a deadly weapon, a felony, on one Andrew J. Botcher.

On the 4th day of March, 1944, the defendant and the complaining witness, Andrew J. Botcher, had been

drinking throughout the day in various bars in the City of Phoenix, Arizona. At approximately one o'clock a. m., on the 5th day of March, 1944, these two men were walking west on Washington Street and after having crossed the intersection of 2nd Street with the said Washington Street, an argument arose, at which time the defendant drew a paring knife from his pocket and stabbed and cut the complaining witness thereby puncturing his lung and liver and confined him to the hospital for several weeks.

The defendant brings this appeal and cites twelve assignments of error under eight, propositions of law. The court will discuss these propositions separately. Propositions Nos. 2 and 4 will be discussed under Proposition No. 2, making seven propositions of law all together.

■ The first three assignments of error are treated under the proposition that defendant was not accorded due process of law in his trial because no women were called on the jury panel and therefore he was denied the right to have women on his trial jury. Defendant claims that Section 6 of Article 6 was violated by legislation in limiting jury duty to men only because the Constitution says "a trial jury shall be drawn and summoned from the body of the county at least three times a year." *Miller* v. *Wilson*, 1942, 59 Ariz. 403, 129 P.2d 668, 670, holds that "if a constitutional provision grants a right which can be put into operation without further legislative action, the provision is self-executing." The question then arises, is this provision self-executing? It is not, because it was necessary for the legislature to provide the manner in which jurors would be drawn, their qualifications, those who are exempt, etc.

■ At the time of the adoption of the Constitution, woman were given the right to vote and hold office under Article 7, Section 2. They could not serve

on juries because Paragraph 2781 of the 1901 Code (Civil) limited jurors to male citizens of the United States. No mention of the right of women to sit on juries was made in the Constitution in the face of an already existing statute which prohibited them from so serving.

It is not unreasonable to conclude that neither the framers of the Constitution nor the people in adopting same meant to override an existing law directly in conflict with the Constitution, if no mention of it were made.

Under the Constitution, Arizona was admitted to statehood in 1912. In 1913, the legislature re-enacted Paragraph 2781 of the 1901 Code, which is Section 37–102 of the 1939 Code, which limits jurors to male citizens. In *Denison* v. *State,* 1928, 34 Ariz. 144, 268 Pac. 617, this court stated "the qualifications of jurors in the state of Arizona are not prescribed by the Constitution, but are found in . . . R. S. A.," and inferentially approved same.

■■ When the Constitution refers to a jury it refers to a jury as it was under the common law, and under that law a jury was no jury unless it was composed of men. 31 Am. Jur. 557. To put a different interpretation on the Constitution would amount to changing it in a manner not thought of by its originators. The fact that Section 43–103 of the 1939 Code provides "words used in the masculine gender include the feminine and neuter" is not sufficient to include women as jurors. "From the earliest period in the history of the common law, juries grand and petit, have been composed exclusively of men." *People* v. *Lensen,* 1917, 34 Cal. App. 336, 167 Pac. 406; *State* v. *Kelley,* 39 Idaho 668, 229 Pac. 659.

■ The passage of the 19th Amendment to the Constitution of the United States granting women the right to vote does not mention their right to serve on

juries. It conferred no new rights on women in Arizona because they were already granted the right of suffrage by the State Constitution. *State* v. *Kelley, supra; Harland* v. *Territory,* 1887, 3 Wash. T. 131, 13 Pac. 453; 35 C. J. 245.

█ The legislature did not violate Article 4, Pt. 2, Sec. 19 of the Constitution by passing a special law relating to summoning and empaneling juries. The Constitution not having given women the right to serve on juries, the law limiting jurors to male citizens only is not a special law because the matter of serving on a jury is not a matter of choice, but is a duty imposed by the state. *Maricopa County* v. *Corp,* 1934, 44 Ariz. 506, 39 Pac. 2d 351. Therefore, if the performance of jury duty is an obligation and not a right, the legislature has the power so to limit it. See *State* v. *Emery,* 1944, 224 N. C. 581, 31 S. E. (2d) 858.

The judicial history of this state, although not controlling, justifies the position that the law prior to 1945 never intended to have women serve on juries. Since the adoption of the Constitution in 1911 and the passage of the 19th Amendment in 1920, the jury laws of this state have been construed by the bar and state to limit the jury duty to men. To change it at this late date might well cause unknown confusion affecting countless verdicts of the past.

Women have the right to vote and hold office in this state. There is no reason why they should not bear the duty of jury service, if the legislature seeks to place that duty upon them. The 17th Legislature, which has just recently adjourned, passed House Bill No. 12, known as the "Women's Jury Bill," which by reason of the emergency clause thereon became a law on March 9, 1945, the day it was signed by the Governor.

█ Proposition of Law Nos. 2 and 3. Instructions refused on lesser or included offenses.—Appellant claims error in the trial court's failure to instruct the

jury on the question of simple and aggravated assault; and also the failure of the court to submit forms of verdict permitting the jury to return a verdict on simple or aggravated assault. The statute relied on by defendant, Section 44–1923, Arizona Code Annotated 1939, provides that ''Upon an indictment or information for any offense the jurors may convict the defendant of . . . any offense which is necessarily included in the offense charged.''

Section 43–603, Arizona Code Annotated 1939, defines aggravated assault. The portion that might be applicable to this case is the 5th subdivision: ''when a serious bodily injury is inflicted upon the person assaulted; . . . .'' The question then arises, is an aggravated assault necessarily included in a charge with an assault with a deadly weapon? The answer is, No!

The defendant relies heavily on *State* v. *Hanks,* 58 Ariz. 77, 118 Pac. (2d) 71, 73, because this court upheld the proposition that it was not error to instruct the jury and to permit it to bring in a verdict of aggravated assault on a charge with intent to commit murder. In that case, Subdivision 6 of 43–603 was construed instead of Subdivision 5 with which we are here concerned. We held in that case that when a man commits ''an assault with intent to commit murder'' he impliedly intends to inflict serious bodily harm and he does so ''with a premeditated design.'' The two cases are readily distinguishable.

Furthermore, in the Hanks case, we said:

'' . . . For instance, one could be guilty of the higher offense without going into a private home and there committing an assault. This proposition is not disputed as to the first four subdivisions of this section, but some question is raised as to the fifth, that is, there is some contention that an assault with intent to commit murder includes an assault which inflicts a serious bodily injury upon the person assaulted. The fallacy of this view readily appears, however, when it

is suggested that one may be guilty of an assault with intent to commit murder without inflicting upon the person assaulted any bodily injury at all, serious or otherwise. For instance, if a person shoots at another intending to kill him, and the bullet pierces the clothing of the latter only, or misses him entirely, no bodily injury whatever is inflicted, yet there could be no question but that the person firing the shot would be guilty of an assault with intent to commit murder.''

The same law is applicable to this case.

The mere fact that the defendant did commit serious bodily injury is no reason why the jury should be given an instruction and alternate verdict on a lesser offense.

The court has reviewed *Dunn* v. *State,* 50 Ariz. 473, 73 Pac. (2d) 107. It is not in point with this case. While there is dictum to the contrary therein, we hold that State v. Hanks, *supra,* is controlling.

■ Where only one crime is charged in the information as in this case, the court below after hearing the proof and defense had the right to instruct that only one verdict should be used.

This case is also distinguishable from *Uren* v. *State,* 27 Ariz. 491, 232 Pac. 398, relied on by the defendant, because in this case the evidence did not warrant an instruction and verdict on a lesser or included offense.

■ As to the matter of the simple assault.—The information necessarily charges a simple assault when it charges ''assault with a deadly weapon,'' but that alone is not sufficient to entitle the defendant to two forms of verdict because if, in this case, he is not guilty of the higher offense he is not guilty of simple assault. Where the proof goes to the higher crime, it is not error to refuse to instruct on the lesser or included offense.

The defendant in this case pleaded self-defense. He did not deny his act, nor did he deny that the knife

was a deadly weapon. Therefore he was either guilty or not guilty of the crime charged.

While assault is not divisible into degrees, yet for this purpose the following cases are relevant. *Ransom* v. *State, ante,* p. 1, 152 Pac. (2d) 621. In quoting from *Singh* v. *State,* 35 Ariz. 432, 280 Pac. 672, 677, 67 A. L. R. 129, this court said:

"If, when the crime charged is divided into two or more degrees, the evidence submitted conclusively shows the defendant either guilty of a degree certain or not guilty, we conclude the court may properly limit the jury's consideration in accordance therewith. . . . "

See also *State* v. *Myers,* 59 Ariz. 200, 125 Pac. (2d) 441, 444:

"While an assault and battery are always included in an unlawful homicide, they are not degrees of such offense requiring the court where death results to instruct that the defendant may be found guilty thereof."

In *Viliborghi* v. *State,* 45 Ariz. 275, 283, 43 Pac. (2d) 210, 214, this court said:

" . . . the court should not instruct upon any degree of an offense which is not reasonably sustained by some phase of the evidence. . . . "

We therefore conclude that if the evidence would sustain a verdict of guilty or not guilty of the offense charged, as it clearly did in this case, it is not error to refuse to instruct upon and submit alternate verdicts to the jury.

■■■ The fourth proposition of law was that the court erred in overruling defendant's motion for a mistrial and new trial, following the county attorney's statement to the jury in his closing argument that the prosecuting witness, Botcher, lay at the point of death for many days as a result of his wounds.

Argument of counsel was not included in the reporter's transcript so the exact words are not before

us for examination, but to take the above as substance of the county attorney's remarks we conclude that they were not improper. The lower court's words were as follows:

"Motion denied. The character of the wounds alleged to have been inflicted were exhibited to the jury and the jury is entitled to draw their own inference from those wounds, and the county attorney is entitled to draw his inference from them, and it is a question of the weight of the testimony. Go ahead."

This court has previously stated, in *Sage* v. *State*, 1921, 22 Ariz. 151, at page 162, 195 Pac. 533 at page 537, that

"courts seldom reverse convictions in criminal cases for the language of the prosecutor in denouncing the conduct of the defendant, when such language is based upon any fact in the record. Ordinarily the question whether the argument is so inflammatory and violent as to have influenced the verdict of the jury must be left to the sound discretion of the trial court on motion for a new trial who hears the entire argument of counsel and can better judge of its pernicious effects, if any. . . . "

See *Richardson* v. *State*, 1921, 23 Ariz. 98, 201 Pac. 845.

Discretion of trial court in granting new trial will not be reviewable or interfered with unless abuse is shown. *Scott* v. *Hammons*, 1929, 35 Ariz. 144, 274 Pac. 1042.

The fifth proposition of law defendant relies on is that the statements made by him to the county attorney before being taken to the nearest magistrate deprived him of his constitutional rights as to due process and equal protection of the law, and the county attorney should not have been allowed to question him regarding the statements during the trial.

These statements to the effect that McDaniels was not sure who struck the first blow, were introduced

by the state just after defendant testified in court that he was positive that Botcher struck the first blow and started the fight. The apparent purpose of the county attorney in cross-examining defendant on these previous statements made at the police station following his arrest was to show conflicting statements made by defendant during the trial. These previous statements were mere admissions of fact, which might or might not prove incriminating in their effect, and did not constitute a confession of guilt. The statements were freely made by accused without any threat, mistreatment, coercion, or any force which might render the statements involuntary. If anything, accused's statements were exculpatory. The fact that such admissions, coupled with other facts proved at the trial, tended to establish accused's guilt of crime charged, does not require the county attorney to lay the same foundation as for a confession, and the evidence was therefore properly admitted. *Lawrence* v. *State,* 1925, 29 Ariz. 247, 240 Pac. 863, rehearing denied 29 Ariz. 318, 241 Pac. 511, and *certiorari* denied 269 U. S. 585, 46 Sup. Ct. 201, 70 L. Ed. 425.

Proposition of Law No. 6—Verdict and Judgment contrary to law and evidence.

 Defendant challenges the sufficiency of the evidence to support the verdict. It is a general rule of law that the findings of a jury as to whether or not defendant acted in self-defense will not be disturbed unless the weight of the evidence is preponderantly against the verdict, and the judgment thereon clearly appears to be wrong. *Richardson* v. *State,* 1928, 268 Pac. 615, 34 Ariz. 139. It is undisputed here that defendant stabbed complaining witness with a paring knife so as to injure his lungs and liver. It is offered in mitigation of this offense that the knifing was done in self-defense. As to this the evidence is conflicting. None of the disinterested witnesses could testify as to

who was the aggressor. The mere fact that Botcher admitted having thrown, or knocked, defendant to the ground several times does not mean that Botcher was the aggressor. Just who the aggressor was is peculiarly a question of fact, and we cannot say as a matter of law that the jury was not justified in holding, under the evidence presented it, that the defendant did not strike in self-defense but rather that he himself initiated the felonious scuffle. The assignment that the evidence was insufficient to support the verdict is not well taken.

 The seventh and last proposition of law is: Defendant claims error in the trial court in that the Superior Court failed to allow counsel fees and expenses in the prosecution of this appeal. Even if such error were committed, we fail to see how it could affect the substantive merits of the case at bar. As the trial court, in overruling defendant's application for counsel fees and expenses on appeal, suggested in its minute entry that the Supreme Court "determine whether or not the trial court has authority to allow attorney's fees on appeal," and as this is a matter of first impression in this state, we must decide whether Section 44–905, Arizona Code Annotated 1939, supports defendant's claim. The statute reads, in part:

" . . . Whenever counsel is appointed by the superior court, and such counsel represents the defendant, in either a criminal proceeding or insanity hearing, such counsel shall be paid by the county in which the court is situated, as compensation for the services rendered to the defendant, such amount as the court in its discretion, shall determine, not less than five ($5.00) nor more than one hundred dollars ($100) to any one (1) attorney for each assignment made by the court."

We hold that the statute limits compensation to one hundred dollars for services rendered at the trial and in preparation therefor and does not allow for ad-

ditional compensation for prosecution of an appeal in the higher court. See 7 C. J. S., Attorney and Client, § 172 (d), p. 1036. By the weight of authority, a county is not liable for fees and disbursements to counsel assigned to defend accused in the absence of statute regulating such compensation. See Abbott, Crim. Trial Practice, 4th Ed., 26.

This court is of the opinion that where counsel appeals a case such as this, where it is obviously not a frivolous appeal, he should be compensated. However, counsel will have to look to the Legislature for their remedy and not the courts. It is a credit to the Bar of Arizona that such an able lawyer appointed by the court as counsel for appellant in this case would, after defending his client in the lower court, take the time to make such a good record on appeal as he has in this case, and without compensation. It is only a lawyer that understands his duty to his clients.

The case is affirmed.

STANFORD, C. J., and MORGAN, J., concur.